UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHENIER HOLLOWAY,

    Petitioner,

v.

Case No. 1:11-cv-1000
Hon. Robert J. Jonker

CARMEN PALMER,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

Following a jury trial in the Wayne Circuit Court, petitioner was convicted of second-degree murder, M.C.L. § 750.317, felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), M.C.L. § 750.227b. *People v. Holloway*, No. 280834, 2009 WL 1607533 (Mich. App. June 9, 2009). Petitioner was sentenced to concurrent terms of 19-30 years imprisonment for the second-degree murder conviction and 3-5 years imprisonment for the felon in possession of a firearm conviction, to be served consecutive to a two-year prison term for the felony-firearm conviction. *Id.*

Petitioner, through counsel, raised four issues in his direct appeal to the Michigan Court of Appeals:

    I.    Was [petitioner] denied a fair trial by the inclusion of statements from Harrell/Scott regarding [his] alleged silence in the face of accusation

>   by [Timothy] Bonds on the night in question, directly in opposition to the holding of [*People v. Bigge*, 288 Mich. 417, 285 N.W 5 (1939)] and [his] right against self incrimination?[1]
>
> II.   Did [petitioner] receive ineffective assistance of counsel when trial counsel failed to object to the improper evidence of [his] silence on *Bigge* and hearsay grounds, or request a motion in limine regarding the testimony; further counsel's motion for a directed verdict failed to note the *Bigge* problem or even cite any testimony; and finally when counsel failed to object to the erroneous statements in the prosecutor's arguments?
>
> III.   Was directed verdict improperly denied?
>
> IV.   Was [petitioner] denied a fair trial due to prosecutorial misconduct in eliciting the improper *Bigge* evidence and misrepresenting [his] brother's testimony?

Petitioner's Brief (docket no. 10).

The Michigan Court of Appeals affirmed the convictions. *Holloway*, 2009 WL 1607533. Petitioner raised the same four issues in his application for leave to appeal to the Michigan Supreme Court. *See* Application for leave (docket no. 11); *People v. Holloway*, 777 N.W.2d 139 (Mich. Jan. 27, 2010). That court stayed the application for leave pending a decision in another case (*People v. Redd* (docket no. 138161)). *Holloway*, 777 N.W.2d 139. After issuing its opinion in *Redd*, the Michigan Supreme Court denied petitioner's application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Holloway*, 488 Mich. 887, 788 N.W.2d 674 (2010). Petitioner raised the same four issues in his habeas petition filed in this Court. *See* Petition (docket no. 1, PageID.1-17).

---

[1] This issue involves a statement made by a person named Tiyest Harrell. When Harrell called a television station "Problem Solvers" to relate information about the murder, she used the name of her niece, Taria Scott. Trial Trans. (docket no. 19-2, PageID.388-390). Harrell used both her real name and Taria Scott's name when making statements to the Detroit Police Department. *Id.* at PageID.389-95. In this regard, Harrell signed one of the statements as "Taria Scott." *Id.* at PageID.395.

## II. Procedural default

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, Issues I and IV are procedurally defaulted and not subject to federal habeas review because petitioner failed to comply with a state procedural rule that requires defendants in criminal cases to present their claims to the trial court before raising them on appeal. *Holloway*, 2009 WL 1607533 at *1-2. Because petitioner did not comply with the state's contemporaneous-objection rule, the Michigan Court of Appeals treated Issues I and IV as waived on direct appeal and reviewed them only for plain error. *Id*. "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right

to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted). *See also, Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, petitioner's Issues I and IV are procedurally defaulted.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.* Here, petitioner claims that his counsel was ineffective for failing to object during trial. If successful, such a claim could serve as both an independent claim of error and as cause to excuse the procedural default of Issues I and IV. However, for the reasons discussed in § IV.B., petitioner's counsel was not constitutionally ineffective.

Petitioner's failure to demonstrate cause prevents federal habeas review of these issues unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.  Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted.  He has failed to meet the fundamental miscarriage of justice exception.  Accordingly, petitioner's claims raised in Issues I and IV are procedurally barred and not subject to federal habeas review.

### III.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, she must first fairly present the substance of her claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons*

*v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103. Thus, "[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### IV. Discussion

#### A. Denial of directed verdict (Issue III)

Petitioner contends that the trial court erred in denying his motion for a directed verdict. Whether a trial court erred in denying a motion for directed verdict involves an issue of state law. It is well established that "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A state court's alleged misapplication of state law in failing to grant a petitioner's motion for a directed verdict is not cognizable in a federal habeas corpus proceeding. *King v. Trippett*, 27 Fed. Appx. 506, 510 (6th Cir.2001) (citing *Estelle*, 502 U.S. at 67-68). *See Rademacher v. Berghuis*, No. 1:08-cv-871, 2011 WL 4500073 at *24 (W.D. Mich. Aug. 11, 2011) (Report & Recommendation), adopted 2011 WL 4499351 (W.D. Mich. Sept. 27, 2011) (state court's failure to grant motion for directed verdict not cognizable on federal habeas review).

However, when a habeas petitioner contests a Michigan Court's denial of a motion for directed verdict, and the state court reviewed that motion under a sufficiency of the evidence standard consistent with *Jackson v. Virginia*, 443 U.S. 307 (1979), such a claim arguably raises a question regarding the sufficiency of the evidence. *See Nali v. Phillips*, 681 F.3d 837, 842-43 (6th Cir. 2012) ("[w]e note that, while the Michigan Court of Appeals only cited decisions of its own court and of the Michigan Supreme Court, it applied the standard set forth in *Jackson* for reviewing the sufficiency of the evidence"). This is such a case. Therefore, the Court will review the directed verdict claim under the *Jackson* standard.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that the Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364.  Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added).  In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict.  *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007).  The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution.  *Wright v. West*, 505 U.S. 277, 296-97 (1992).  *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").  Finally, because both the *Jackson* standard and AEDPA apply to petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir.2008).

> The trial judge addressed petitioner's motion for directed verdict as follows:
>
> Well, based upon the standard that's to be applied in this case, the trial court has to look at the evidence in the light most favorable to the prosecution, and it is not the role of the court to assess the credibility of witnesses for a directed verdict standard.  And it's for the jury to decide who to believe and what to believe.  And in the light most favorable to the prosecution the circumstantial evidence is not an improper or a double inference when you combine the, if it's believed that there was a flash that came from Mr. Holloway's person or hand and it was then passed on to someone else and it's all contemporaneous with the victim falling to the ground and

>   having a gunshot wound, then the prosecution for purposes of this motion has survived a directed verdict.
>
>   The motion's denied.

Trial Trans. (docket no. 19-5, PageID.973-974).

The Michigan Court of Appeals affirmed the trial judge's denial of the motion:

>   Defendant next asserts the trial court erred in denying his motion for directed verdict. We disagree. This Court reviews a trial court's ruling on a motion for directed verdict de novo to determine whether the evidence, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the elements of the charged offense were established beyond a reasonable doubt. *Cacevic v. Simplimatic Engineering Co. (On Remand)*, 248 Mich.App. 670, 679, 645 N.W.2d 287 (2001).
>
>   In order to secure a conviction for second-degree murder, the prosecution must establish that there was "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 457 Mich. 442, 464, 579 N.W.2d 868 (1998). In the present case, defendant challenges the second prong, indicating that he was improperly identified as the shooter. There were factual inconsistencies between the various witnesses' testimony, to be sure, however, as described elsewhere in this opinion, there was sufficient admissible evidence implicating defendant as the shooter. Marcus Jackson specifically identified defendant as the shooter and several other witnesses bolstered his testimony. A reasonable finder of fact could thus have concluded that defendant was the shooter. The trial court properly denied defendant's motion for directed verdict and permitted the jury to reach a verdict. Defendant is not entitled to relief.

*Holloway*, 2009 WL 1607533 at *3.

The thrust of petitioner's habeas claim is that the trial judge expressed a personal doubt about the quality of the evidence when sentencing petitioner. *See* Petitioner's Brief at PageID.68-69. At sentencing, petitioner faced a guidelines range of 18 years, 9 months to 62 years. Sent. Trans. (docket no. 19-8, PageID.1069). The trial judge stated the following reasons for giving petitioner a minimum sentence near the bottom of the guidelines:

>   I sat through the trial. I listened to every word of testimony, looked at every witness, looked at every exhibit, and then it was submitted to the jury and 12 people

>made their decision.  It's been suggested by [petitioner's counsel] that there may be an issue of quality of testimony and that that would be a reason for a downward departure.
>
>I left and took a short period of time to look into a little bit of case law to see what's the status on that.  And factors for a downward departure according to the law include mitigating circumstance of the offense, of course the offense is extremely serious, a death of someone, defendant's previous criminal record; there is a criminal record of possessing a handgun on three different occasions of which he plead guilty, defendant's age, his employment history and perhaps relevant post arrest events.  The law does not allow for what Mr. Holloway's attorney is suggesting; that the quality of testimony be a basis for a guideline departure; it's not allowed.
>
>I did hear the evidence.  I remember the witnesses had been, some of them had been drinking heavily, some of them had been smoking marijuana.  There were fleeting blitzes in a highly charged atmosphere.  I remember the witnesses that told the police it was one person when first interviewed, and then two, three, four months later told the police it was another person who was the perpetrator of the crime.
>
>I respect and follow the jury's conclusion.  The family of the deceased, Carlvelle Marshall, can never be comforted or at peace with anything that I do here.  Carlvelle Marshall's mother, his wife, his children, will take this loss to their own graves; it never goes away.
>
>Although I respect the jury's conclusion, and I will follow their conclusion as the law in case, I am left wanting personally for the quality of the evidence, and accordingly, I am sentencing Mr. Holloway within the guidelines as to second degree murder. I am sentencing him to a term of 19 to 30 years.  For felon in possession, three to five years, and felony firearm is a mandatory consecutive two years imprisonment.

Sent. Trans. at PageID.1079-1081.

The evidence presented at trial was sufficient for a rational jury to infer, beyond a reasonable doubt, that petitioner was the shooter. Despite the trial judge's remarks about the quality of the evidence at the sentencing, these remarks did not amount to a finding that the evidence supporting petitioner's conviction was constitutionally insufficient. On the contrary, the judge respected and followed the jury's determination that petitioner was guilty of the charged offenses.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### B.     Ineffective assistance of counsel (Issue II)

#### 1.     Legal standard

Petitioner contends that his trial counsel provided ineffective assistance on three occasions. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations

omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

> **2. Petitioner's ineffective assistance claims**
>
> **a. Failure to object to the *Bigges* evidence given by Harrell**

The prosecution presented Harrell as its second witness. Trial Trans. (docket no. 19-2, PageID.377). On appeal, petitioner asserted "that the trial court erred in allowing Tiyest Harrell to testify that after the murder, Timothy Bonds and defendant appeared at her home and, when Bonds advised that defendant had committed the murder, defendant remained silent." *Holloway*, 2009 WL 1607533 at *1. Petitioner did not identify any federal constitutional violation related to the admission of this evidence. The basis for petitioner's claim was that testimony regarding his silence was not admissible under Michigan law, specifically *People v. Bigge*, 288 Mich. 417, 285 N.W. 5 (1939), which stated in pertinent part "[t]here can be no such thing as confession of guilt by silence in or out of court." *Id.* The Michigan Court of Appeals found no error, concluding that "[w]hile admission of the evidence may have been improper, defendant is not entitled to relief as defendant was not prejudiced by the admission of the evidence." *Id.*

Petitioner contends that his counsel was ineffective for failing to object to Harrell's testimony because it violated *Bigges*. The Michigan Court of Appeals addressed the context of this evidence and the ineffective assistance of counsel claim in pertinent part as follows:

> First, Harrell's testimony could have been viewed as untrustworthy. She gave a false name when she provided her first statement to police that Timothy Bonds had implicated defendant as the shooter. In a later statement, however, she said that Bonds stated his cousin Dwight shot the victim. Although Harrell explained that her first statement was in fact accurate and that she only changed her statement to go

13

along with what she believed the police wanted to hear, the fact that she gave a false name and provided two contradictory statements to police may have undermined her credibility at trial. As an additional challenge to Harrell's credibility, Bonds testified that he did not go to Harrell's home on the night of the shooting and that he never told Harrell that defendant shot the deceased, Carvelle Marshall.

Second, and perhaps more importantly, Harrell testified that defendant was wearing a beanie on the night in question. Walter Rogers, David Hendrick and Marcus Jackson were at the PPH Lounge with Carvelle Marshall on the night of the shooting. Each witness testified at trial that a man with a beanie was near Carvelle Marshall at the time of the shooting. Hendrick further testified that the man with the beanie was the shooter. Finally, Marcus Jackson not only testified that a man with a beanie was involved in the shooting, but identified defendant as the shooter in a 2006 photo lineup.

While certainly there was contradictory testimony presented at the trial and not all of the witnesses were able to identify defendant in a photo lineup, if we exclude the testimony concerning defendant's silence, there was still sufficient evidence of his involvement in the murder. While the dissent refers to the evidence against defendant as "ambivalent", the jury was free to believe or disbelieve the contradicting testimony and, absent exceptional circumstances, issues of witness credibility are for the jury's determination. *People v. Lemmon*, 456 Mich. 625, 642-643, 576 N.W.2d 129 (1998). Given the existence of sufficient evidence (other than that at issue) identifying defendant as being involved in the murder, defendant has failed to demonstrate that admission of Harrell's testimony seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence, and ultimately prejudiced him.

\* \* \*

Defendant primarily alleges that counsel was ineffective for allowing Harrell to testify regarding Timothy Bonds' statements and defendant's silence in the face of those statements. Counsel clearly explained that he was permitting the hearsay testimony for strategic purposes and that he had made the decision after conferring with defendant. By admitting the testimony, counsel was able to later impeach Harrell with her subsequent inconsistent statements to Sergeant Drew. Counsel's decision exhibits a reasonable strategy and his performance was not deficient in this regard. Moreover, defendant's conviction was not the result of Harrell's testimony. Rather, the conviction was secured after Marcus Jackson positively identified defendant and other witnesses corroborated portions of his testimony. Defendant is not entitled to relief where counsel's decision did not affect the outcome of the trial.

*Holloway*, 2009 WL 1607533 at \*1-2, 4.

14

"As a general matter, it is not easy to prevail on claims of ineffective assistance based on failures to object at trial because 'the defendant must overcome the presumption that. . . the challenged action might be considered sound trial strategy.'" *Britt v. Howes*, 404 Fed. Appx. 954, 957(6th Cir. 2010). Counsel's decision not to object to Harrell's testimony was a sound trial strategy for the reasons explained by the state appellate court. In short, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See Harrington*, 562 U.S. at 105. Accordingly, this claim of error should be denied.

        **b.**        **Failure to present an adequate motion for directed verdict**

Petitioner also contends that counsel failed to present an adequate motion for directed verdict. In this regard, petitioner does not cite any authority, but simply points out that "the verdict [sic] was simply an oral motion, with no recitation of any facts." Petitioner's Brief (docket no. 1-1, PageID.66). The Michigan Court of Appeals addressed this claim as follows:

> Next, defendant contends that counsel was ineffective when he failed to provide a factual basis for his motion for directed verdict. The trial court was present throughout the proceedings and there is no indication that the [sic] she was unfamiliar with the facts of the case. A recitation of the facts would have been redundant and unpersuasive. Furthermore, as addressed above, the grant of a directed verdict would have been improper. Because defendant was not entitled to directed verdict, counsel was not deficient for failing to reiterate facts in support of a meritless motion.

*Holloway*, 2009 WL 1607533 at *4.

The trial judge was familiar with the prosecutor's proofs. Petitioner's counsel stated to the trial judge that he was moving for directed verdict "without articulating all the factual underpinnings," and that "it is our position that the evidence and testimony regarding who fired the fatal shot is just so incredible, so unreliable and untrustworthy that no reasonable jury could find beyond a reasonable doubt that Mr. Holloway is that person." Trial Trans. at PageID.971. Even if

the Court assumes, for purposes of this argument, that counsel's feeble articulation was deficient, petitioner was not prejudiced because the motion was without merit. Counsel cannot be ineffective for failing to raise meritless or futile arguments. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). In this case, petitioner's counsel cannot be ineffective for failing to articulate arguments in support of a meritless motion. Accordingly, this claim should be denied.

>    **c.    Counsel failed to object to the erroneous statements in the prosecutor's arguments**

Petitioner contends that his counsel was ineffective for failing to object to the following portion of the prosecutor's closing statement:

> And also, what did the defendant say in his statement? He said that Timothy [Bonds] told him that Dwight [Bonds' cousin] shot the guy. Well, what did the defendant's brother testify to? The defendant's brother testified to the fact that the defendant told him that Timothy said that Tim shot the guy, so you can see that there's inconsistent statements, false statements by the defendant and his brother about what occurred. That you consider [sic] in determining the credibility of the defendant's own statement.

Trial Trans. (docket no. 19-5, PageID.990); Petitioner's Brief at PageID.71-72.

As an initial matter, petitioner makes a one-sentence claim regarding ineffective assistance, i.e., "[c]ounsel did not object to the prosecutor's mischaracterization of [petitioner's] brother's testimony about his whereabouts on the night in question." Petitioner's Brief at PageID.67. This type of unsupported allegation of ineffective assistance of counsel fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional

16

assistance." *Strickland*, 466 U.S. at 689. *See Fountain v. United States*, 211 F.3d 429, 435 (7th Cir. 2000) (unsupported assertions which fail to direct the court to "specific actions or omissions" to form the basis of an ineffective assistance of counsel claim "fail[] to overcome the heavy burden and presumption that his counsel was constitutionally effective"); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir.1998) (conclusory allegations of ineffective assistance of counsel are not sufficient to justify habeas relief).

However, even if petitioner had addressed this issue in sufficient detail, this claim is based upon the assumption that the prosecutor mischaracterized the evidence. As the Michigan Court of Appeals explained, the prosecutor did not mischaracterize the evidence:

> Contrary to defendant's assertion, George Holloway clearly testified that defendant told him that he had heard that Timothy Bonds shot the victim;
>
> > Q: Okay. Who did [defendant] tell you he heard had done the shooting at the PPH lounge?
> >
> > A: He had told me that he heard that Tim [Bonds] had something to do with it.
> >
> > Q: Okay. Didn't he specifically tell you that he heard that Tim had done the shooting?
> >
> > A: Yes.
>
> The only inconsistency between the testimony and the closing argument is that George Holloway testified that defendant told him he had *heard* that Timothy Bonds shot the victim, while the prosecutor stated that defendant told Holloway that Timothy had *told* him that he [Tim] shot the victim. Both the testimony and the closing statement serve as evidence that Timothy Bonds was the shooter and, as such, this minor inconsistency had no bearing on the ultimate issue in the case.

*Holloway*, 2009 WL 1607533 at *3.

>In resolving the ineffective assistance claim, the Michigan Court of Appeals stated:
>
>>Next, defendant asserts that counsel was ineffective for failing to object when the prosecution mischaracterized his brother's testimony. As previously indicated, however, there was no material mischaracterization. Because the prosecution did not materially misrepresent the evidence during its closing argument, defendant cannot establish that his counsel was ineffective for raising an objection without merit.

*Id.* at *5.

Counsel cannot be ineffective for failing to raise a meritless objection to the prosecutor's closing statement. *See Coley*, 706 F.3d at 752; *Ludwig*, 162 F.3d at 459; *Lilly*, 988 F.2d at 786. Accordingly, this claim of error should be denied.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: April 18, 2016                /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).